**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>TRAVIS GARRETTE<br><br>Appellant | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 75 EDA 2014 |

Appeal from the Judgment of Sentence December 2, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011939-2011
CP-51-CR-0011940-2011
CP-51-CR-0011986-2011

BEFORE: MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.: **FILED NOVEMBER 04, 2015**

Appellant, Travis Garrette, appeals *pro se*[1] from the December 2, 2013 aggregate judgment of sentence of 8 to 16 years' imprisonment, imposed after Appellant was found guilty of two counts of robbery, and three counts each of possession of instruments of crimes (PIC), and prohibited offensive weapons.[2] After careful review, we affirm.

The trial court, in its July 23, 2014 opinion, has aptly summarized the factual history of this case, which we need not repeat in full here. ***See***

---

[1] This Court previously remanded to the trial court for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). The trial court conducted its ***Grazier*** hearing on October 27, 2014, at the conclusion of which, the trial court permitted Appellant to proceed *pro se* on appeal.

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 907(a), and 908(a), respectively.

***generally*** Trial Court Opinion, 7/23/14, at 2-6. On October 26, 2011, the Commonwealth filed an information at docket number CP-51-CR-11939-2011, charging Appellant with one count each of firearms not to be carried without a license, attempted theft by unlawful taking, carrying firearms in public in Philadelphia, PIC, and prohibited offensive weapons.[3] That same date, the Commonwealth filed a second information at docket number CP-51-CR-11940-2011, charging Appellant with one count each of robbery, firearms not to be carried without a license, theft by unlawful taking, carrying firearms in public in Philadelphia, PIC, prohibited offensive weapons, simple assault, and recklessly endangering another person (REAP).[4] That same day, the Commonwealth filed a third information at docket number CP-51-CR-11986-2011, charging Appellant with one count each of the same eight offenses as at docket number CP-51-CR-11940-2011.

Appellant proceeded to a consolidated bench trial on all three docket numbers on September 23, 2013, at the conclusion of which the trial court found Appellant guilty of two counts of robbery, and three counts each of PIC and prohibited offensive weapons. On December 2, 2013, the trial court

---

[3] 18 Pa.C.S.A. §§ 6106(a)(1), 901(a), 6108, 907(a), and 908(a), respectively.

[4] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 6106(a)(1), 3921(a), 6108, 907(a), 908(a), 2701(a), and 2705, respectively.

imposed an aggregate sentence of 8 to 16 years' imprisonment.[5] On December 11, 2013, Appellant filed a timely post-sentence motion, which the trial court denied on December 16, 2013. On January 6, 2014, Appellant filed a timely notice of appeal.[6]

On appeal, Appellant raises the following five issues for our review.

> I. Whether [the] Commonwealth presented sufficient evidence to establish [A]ppellant committed the gunpoint robberies that took place on May 18, 2011 and June 2, 2011?
>
> II. Whether [the] Commonwealth erred by instructing [the t]rial [c]ourt to find [A]ppellant guilty of [a]ccomplice [l]iability?
>
> III. Whether [the t]rial [c]ourt erred by finding [A]ppellant guilty of [robbery] in connection with the robbery that happen[ed] on June 2, 2011?
>
> IV. Whether [the] Commonwealth erred under (Pa.R.Crim.P. 564) when [the] Commonwealth instructed [the t]rial [c]ourt to find [A]ppellant guilty of a new alleged criminal act at closing arguments during trial?
>
> V. Whether [A]ppellant was denied due process of law when [the] stenographer failed to follow Rule 1922 of [the] Pennsylvania Rule of

---

[5] Specifically, the trial court imposed five to ten years for the robbery count at docket number CP-51-CR-11940-2011 and three to six years for the robbery count at docket number CP-51-CR-11986-2011. The two sentences were to run consecutively to each other. The trial court imposed no further penalty on any of the remaining charges.

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> Appellate Procedure and/or failed to file the accurate transcript by omitting the Commonwealth's direct examination, [A]ppellant's counsel['s] cross examination, [A]ppellant's testimony, and [the t]rial [c]ourt's ruling of the verdict against [A]ppellant?

Appellant's Brief at 5.

As the trial court explains, Appellant's first four issues essentially challenge the sufficiency of the Commonwealth's evidence for Appellant's robbery conviction. ***See generally*** Trial Court Opinion, 7/23/14, at 8-12. We review a claim regarding the sufficiency of the evidence *de novo*, as it is a pure question of law, by looking at the record in the light most favorable to the Commonwealth as the verdict winner. ***Commonwealth v. Murray***, 83 A.3d 137, 150-151 (Pa. 2013). In his fifth issue, Appellant argues he was denied due process of law because the court reporter omitted certain portions of the trial from the trial transcript. Appellant's Brief at 53. We review such questions of constitutional law *de novo*. ***Commonwealth v. Colvita***, 993 A.2d 874, 886 (Pa. 2010).

Instantly, the trial court has authored two comprehensive opinions that properly dispose of all of Appellant's claims. In its July 23, 2014 opinion, the trial court explains that the evidence was sufficient to sustain the Commonwealth's conviction for robbery because the evidence established that he "posed as a seller of a computer that did not exist, but which he listed for sale on Craig's List" on May 18, 2011. Trial Court

Opinion, 7/23/14, at 10. Appellant then, "[a]rmed with a sawed-off shotgun that he pointed at his victim's face while demanding 'all the f*cking money', … clearly put Mr. Uyehara in fear of serious bodily injury in the taking of his case and cell phone." ***Id.*** The trial court also explained how Appellant was, at a minimum, guilty under an accomplice theory of liability of the June 2, 2011 robbery, because "Appellant's confessed cohort, Jarred, used Appellant's cell phone to set up the robbery, and the same multicolored bag and sawed-off shotgun to perpetuate it -- all of which he promptly returned to Appellant fresh after marauding." ***Id.*** Therefore, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to sustain Appellant's convictions. ***See Murray***, ***supra***.

In its March 17, 2015 supplemental opinion, the trial court undertook a comprehensive review of the entire trial transcript and illustrated that nothing was missing from the same. The trial court gives a page range for each witness's direct examination, cross examination, as well as any redirect and recross, as well as the parties' closing arguments and the trial court's verdict. Trial Court Opinion, 3/17/15, at 3-4. This more than adequately refutes Appellant's due process claim. ***See Colvita***, ***supra***.

We have reviewed the record in its entirety and have considered the merits of Appellant's claims. Based on our careful scrutiny of the certified record, including the notes of testimony, the parties' briefs, and the

applicable law, we conclude that the trial court's factual findings were supported by the record, and its legal conclusions were entirely proper. The well-reasoned opinions of the trial court provide a detailed analysis of the law of this Commonwealth as related to the facts of this case. The trial court then wholly refutes each of Appellant's arguments. Accordingly, we conclude that the July 23, 2014 and March 17, 2015 opinions of the Honorable Susan I. Schulman comprehensively discuss and properly dispose of Appellant's claims.[7] Accordingly, we adopt the trial court's opinions as our own and affirm the December 2, 2013 judgment of sentence.[8]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2015

---

[7] We note that Appellant's ineffective assistance of counsel claims, addressed by the trial court on page 12 of its July 23, 2014 opinion, were not pursued by Appellant on appeal. Therefore, we will not review those claims, and our disposition in this matter pertains solely to Appellant's issues listed in this memorandum.

[8] The parties are directed to attach a copy of the trial court's July 23, 2014 and March 17, 2015 opinions to this memorandum in the event of further proceedings.

Circulated 10/08/2015 11:41 AM

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0011939-2011
: CP-51-CR-0011940-2011
: CP-51-CR-0011986-2011
VS. :

TRAVIS GARRETT 75 EDA 2014




FILED
JUL 23 2014
Criminal Appeals Unit
First Judicial District of PA

OPINION

SCHULMAN, S.I., J.

Travis Garrett ("Appellant") has appealed this Court's judgment of conviction and sentence. This Court submits the following Opinion in accordance with the requirements of Pa. R.A.P. 1925, and for the reasons set forth herein, recommends that its judgment be affirmed.

PROCEDURAL HISTORY

On September 23, 2013, following a bench trial before this Court, Appellant was convicted of two counts of Robbery,[1] three counts of Possessing an Instrument of Crime ("PIC"),[2] and three counts of Prohibited Offensive Weapon ("POW").[3] On December 2, 2013, upon review of the pre-sentence investigation report ordered by this Court, and consideration of all relevant facts and circumstances of this case, this Court sentenced Appellant to a mandatory minimum sentence of five (5) to ten (10) years' incarceration for Robbery (under bill of information number 0011940), and a consecutive term of three (3) to six (6) years for Robbery (under bill of information number 0011986). No further penalty was imposed on any of Appellant's remaining six (6) convictions for PIC and POW.

[1] 18 Pa.C.S. § 3701.
[2] 18 Pa.C.S. § 907.
[3] 18 Pa.C.S. § 908.

Circulated 10/08/2015 11:41 AM

Appellant's trial counsel timely filed a post-sentence motion challenging the weight of the evidence, which this Court denied by Order entered December 18, 2013. Trial counsel thereafter was permitted to withdraw, and new counsel was appointed to represent Appellant on direct appeal. Counsel for Appellant timely filed a notice of appeal; upon reviewing the record, however, he determined that an appeal would be wholly frivolous. Accordingly, counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) and Commonwealth v. McClendon, 434 A.2d 1185 (Pa. 1981). Appellant was duly served with a copy of said Anders brief, and he timely filed a pro se Concise Statement of Matters Complained of on Appeal, the issues of which shall be addressed infra.

FACTUAL HISTORY

At trial, the Commonwealth first presented the testimony of complainant Taylor Uyehara. Mr. Uyehara testified that, on May 18, 2011, he attempted to purchase a Mac Book Pro laptop computer that was posted on Craig's List. After speaking with the seller on the phone, and exchanging various text messages regarding the laptop, Mr. Uyehara agreed to meet him later that evening at the CVS store located at 4th and Spring Garden Streets in Philadelphia. Mr. Uyehara rode his bicycle to that location at approximately 8:00 p.m., and entered the CVS to make an ATM withdrawal of $900 -- the agreed upon price for the laptop. The seller did not show, however, prompting Mr. Uyehara to call him and inquire as to his whereabouts. During the call, the seller proposed an alternate rendezvous of 5th Street and Fairmount Avenue. With $900 cash on his person, Mr. Uyehara did not feel comfortable meeting there, and declined the seller's proposal. As he rode away from the CVS, a large black male jumped in front of his bike, and pointing a sawed-off shotgun directly at his face, demanded: "give me the f*cking money, and the phone too." Terrorized, Mr. Uyehara complied, dropping the cash and iPhone to the

Circulated 10/08/2015 11:41 AM

ground. His assailant picked up the cash and phone off the ground and ran southbound on 4th Street, while Mr. Uyehara ran northbound on 4th Street. (See N.T. 09/23/13, pp. 21-27).

Approximately two blocks from the crime scene, a neighbor let Mr. Uyehara borrow his cell phone to call police. He described his assailant as a black male who was "over 200 pounds and over 6 feet tall", wearing a black hoodie and black basketball shorts. Police arrived shortly thereafter and Mr. Uyehara provided a detailed description of the incident. On May 27, 2011, he went to Central Detectives to view a photo array; while he was unable to single out Appellant, Mr. Uyehara circled the photos of two (2) males he believed to be his attacker -- one of whom was Appellant. (See N.T. 09/23/13, pp. 27-31, 94-95).

The Commonwealth next presented the testimony of complainant Erik Eigornia. Mr. Eigornia testified that, on June 2, 2011, he attempted to purchase a Mac Book Pro laptop that was listed for sale on Craig's List. After exchanging text messages, they agreed to meet at 5th and Poplar Streets at 8:30 p.m. The seller texted Mr. Eigornia to look for him, he'll be wearing a blue Yankees cap. When Mr. Eigornia arrived at 5th and Poplar Streets, a male wearing a blue Yankees cap was standing across the street; he approached, carrying a multicolored laptop bag, and entered Mr. Eigornia's vehicle. He then asked Mr. Eigornia to shut off the interior light, retrieved a sawed-off shotgun from the multicolored bag, and pointed it at Mr. Eigornia, demanding that he give him all his money and anything he had. Mr. Eigornia handed over his cell phone, and tossed $500 in cash and $700 in money orders onto the passenger compartment floor. As his assailant bent down to retrieve the money, Mr. Eigornia grabbed his keys from the ignition and fled; he looked back and saw his attacker fleeing in the opposite direction. (See N.T. 09/23/13, pp. 50-54).

Mr. Eigornia ran back to his car, where he saw a couple standing in front of their home. They allowed him to use their phone to call police, and also their computer to access his phone records, which showed the seller's phone number as (215) 941-2392. Mr. Eigornia provided this information to police, and described his assailant as approximately 5'10" with a slender build, wearing a blue Yankees cap. Although Mr. Eigornia was unable to identify Appellant from a photo array as his attacker, the phone number he provided to police led them to Appellant on the ensuing morning. (See N.T. 09/23/13, pp. 54-57).

Philadelphia Police Officer Michael Harvey testified next for the Commonwealth. He testified that, on June 2, 2011, he responded to the scene of the robbery, where he obtained the above phone number from Mr. Eigornia. Later that evening, Officer Harvey dialed the number and left a voice message stating that he was interested in buying the laptop. At 7:24 a.m. on the following morning, Officer Harvey received a text message from the same number, inquiring if he was "still interested" in the laptop; he then exchanged several text messages with the seller, discussing the laptop. Later that night, between 8:37 and 9:07 p.m., Officer Harvey exchanged additional text messages negotiating the sale price. Once the sale price was ironed out, Officer Harvey agreed to meet the seller at 5th Street and Fairmount Avenue at 10:30 p.m. The seller stated that he would be wearing a sky blue shirt. (See N.T. 09/23/13, pp. 73-77).

Accompanied by two fellow officers in an unmarked vehicle, Officer Harvey arrived at 5th Street and Fairmount Avenue at 10:30 p.m. Shortly thereafter, Appellant emerged wearing a sky blue shirt and carrying a multicolored laptop bag. Officer Harvey described the ensuing events as follows:

> And at that point, [Appellant] walked southbound on 5th and westbound across Fairmount towards our car carrying a laptop case.

> I alerted my backup, which was [Detective] Velazquez, [Lieutenant] DeAngelo, and the two members of SWAT, that the offender was moving in on us. They then, also in an unmarked vehicle, came up as the offender approached our car. They went past the offender and at that point, jumped out of their vehicle. The defendant then took the laptop case, said ["]oh shit["], threw it up in the air, and fled southbound.
>
> * * *
>
> I immediately recovered the computer case that ultimately contained the shotgun from the highway at that location.

(See N.T. 09/23/13, pp. 77-79).[4]

The Commonwealth next presented Detective Louis Velazquez, who testified that on the night of his arrest, Appellant agreed to provide a statement of his own free will. In his statement, Appellant admitted that he robbed Mr. Uyehara on May 18, 2011 via the laptop ruse using "the same shot gun [he] was caught with tonight", after posting the Mac Book Pro ad on Craig's List. He also admitted that he did not own a Mac Book Pro laptop, and that he used the phone number of (856) 952-0274 for the Uyehara robbery, after which the phone was cut off, so he started using the (215) 941-2392 number. Appellant further admitted that he exchanged texts that morning (June 3, 2011) with a guy interested in the laptop, and went to meet him at 5th and Fairmount at 10:30 p.m., toting the same multicolored laptop bag and shotgun he used to rob Mr. Uyehara. Appellant also stated that his friend "Ty" drove him to the crime scenes. (See N.T. 09/23/13, pp. 101-104, 107-109).

As for the Eigornia robbery, Appellant stated, "I didn't do it, but I know who did. That was Jarred. I was -- I was around -- I'm sorry. I wasn't around or anything." Appellant then admitted that Jarred used his (Appellant's) phone, i.e., (215) 941-2392, to set up, and the shotgun

---

[4] At Central Detectives, complainant Erik Eigornia positively identified the shotgun and laptop bag as those that were used to rob him the previous day. (See N.T. 09/23/13, pp. 69-71).

Circulated 10/08/2015 11:41 AM

to commit, the robbery of Mr. Eigornia, after which Jarred promptly returned the instruments to Appellant. (See N.T. 09/23/13, pp. 104-107).

Against the advice of his counsel, Appellant testified in his own defense. He claimed that police beat him, coerced him into providing a statement, and ignored his request for a lawyer. He also testified that although he had informed police of Ty's involvement, it really was Jarred and another friend, Will Wilcox, who committed the robberies, not Appellant. He testified that Will controlled the Craig's List postings and Jarred used Appellant's phone to set up the robberies. He further testified that Jarred gave Appellant his cell phone back along and the multicolored laptop bag containing the shot gun on June 2, 2011 immediately after the second robbery. (See N.T. 09/23/13, pp. 144-151).

Upon consideration of the above evidence, this Court, sitting as fact-finder and assessor of credibility, found Appellant guilty of two counts of Robbery, and three counts each of PIC and POW. This Court subsequently imposed sentence as previously set forth.

DISCUSSION

As noted above, counsel for Appellant has filed an Anders brief noting, inter alia, that an appeal would be wholly frivolous. As explicated by the Pennsylvania Supreme Court, in order for a brief to comply with Anders and McClendon, counsel must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Commonwealth v. Santiago, 978 A.2d 349, 361 (Pa. 2009).

Here, having presided over Appellant's trial, this Court is quite satisfied that counsel thoroughly and accurately examined the record in this case before concluding that an appeal would be wholly frivolous. Indeed, counsel's brief accurately recites the relevant procedural history and facts, with record citations; raises the only issues that arguably could support the appeal (sufficiency and weight of the evidence, neither of which has any merit); sets forth counsel's conclusion that the appeal is frivolous; and includes a comprehensive discussion of counsel's reasons for concluding that the appeal is frivolous. See Santiago at 361. This Court not only presided over Appellant's trial, but has since painstakingly reviewed the record to ensure that the judgments rendered in this case were sound.[5] Accordingly, this Court recommends that counsel be permitted to withdraw.

This does not end the matter, however, as Appellant has elected to raise the following issues, pro se:

> **1. Whether "[the] Commonwealth presented sufficient [ ] evidence to establish [that] [A]ppellant committed the gunpoint robberies that took place on [May 18, 2011 and June 2, 2011]";**
>
> **2. Whether "[the] Commonwealth erred by instructing [the] Trial Judge to find [A]ppellant guilty of [a]ccomplice liability";**
>
> **3. Whether "[the] Trial Judge erred [by] finding [A]ppellant guilty of (3701(a)(i)(ii) Robbery) in connection with the incident that happen[ed] on [June 2, 2011]";**
>
> **4. Whether "[the] Commonwealth erred under (Pa.R.Crim.P. 229) when it instructed [the] Trial Judge to find [A]ppellant guilty of a new allege[d] criminal act at closing arguments at trial";**
>
> **5. Whether "[appellate] counsel was ineffective for failing to [file a] motion for [judgment] of [acquittal]";**

[5] Appellant raises various pro se issues which overlap the issues flagged by counsel, and will be discussed in detail below.

**6. Whether "[appellate] counsel was ineffective for failure to raise and preserve matters of [weight] & sufficiency on direct appeal, when requested to [do so] by [A]ppellant";**

**7. Whether "[appellate] counsel was ineffective for failing to object to the Commonwealth['s] instruction to [the] Trial Judge, in regards to finding [A]ppellant guilty of [a]ccomplice liability"; and**

**8. Whether "[appellate] counsel was ineffective for failure to [file an] arrest of judgment motion".**

This Court will address the first four issues in the order presented above, and the final four issues together as they comprise counsel ineffectiveness claims unripe for review on direct appeal.

**1. Sufficient Evidence Sustained Appellant's Robbery Convictions.**

Appellant claims that the evidence was insufficient to sustain his robbery convictions. This claim is without merit.

**a. Sufficiency Standard**

In evaluating a challenge to the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the Commonwealth as verdict winner. It accepts as true all the evidence, direct and circumstantial, and all reasonable inferences arising therefrom upon which the finder of fact could properly have based its verdict, in determining whether the evidence and inferences are sufficient to support the challenged conviction. Commonwealth v. Carroll, 507 A.2d 819, 820 (Pa. 1986); Commonwealth v. Griscavage, 517 A.2d 1256, 1259 (Pa. 1986); Commonwealth v. Hopkins, 747 A.2d 910, 913 (Pa. Super. 2000).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. Jones, 874 A.2d 108, 120 (Pa. Super. 2005); see Commonwealth v. Rippy, 732 A.2d 1216, 1218-1219 (Pa. Super. 1999) (while conviction

must be based on more than mere speculation, "the Commonwealth need not establish guilt to a mathematical certainty"). Any question of doubt is for the fact finder to determine. See Commonwealth v. Sullivan, 371 A.2d 468, 478 (Pa. 1977); Commonwealth v. Sneddon, 738 A.2d 1026, 1027 (Pa. Super. 1999). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Jones, 874 A.2d at 120. Thus, the decision of the trier of fact will not be disturbed where there is support for the verdict in the record. Commonwealth v. Bachert, 453 A.2d 931, 935 (Pa. 1982). When assessing the sufficiency of the evidence, this Court "may not weigh the evidence and substitute [its] judgment for that of the fact-finder." Commonwealth v. Vetrini, 734 A.2d 404, 407 (Pa. Super. 1999). If, after considering the evidence and all reasonable inferences drawn therefrom, the fact finder could have found that every element of the crime charged was proven beyond a reasonable doubt, the evidence will be deemed sufficient. Commonwealth v. Newsome, 787 A.2d 1045, 1047 (Pa. Super. 2001).

i. Robbery

A person commits the crime of robbery if, in the course of attempting a theft, he "'threatens another with or intentionally puts him in fear of immediate serious bodily injury.'" Commonwealth v. Gillard, 850 A.2d 1273, 1275 (Pa. Super. 2004) (quoting 18 Pa.C.S. § 3701(a)(1)(ii)). The robbery is complete upon commission or threat of violence, and thus completion of the theft is not required. See Commonwealth v. Thompson, 648 A.2d 315, 319 (Pa. 1999), overruled in part on other grounds by Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745 (Pa. 2000); Commonwealth v. Natividad, 773 A.2d 167, 176 (Pa. 2001) ("There is no requirement that the robbery be successful.").

ii. Accomplice Liability

It is axiomatic that "a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa. 2004) (citing 18 Pa.C.S. § 306; Commonwealth v. Bradley, 392 A.2d 688, 690 (Pa. 1978) (the actor and his accomplice share equal responsibility for commission of a criminal act)). "A person is deemed an accomplice of a principal if "'with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aided or agreed or attempted to aid such other person in planning or committing it.'" Murphy at 1234 (quoting 18 Pa.C.S. § 306; citing Commonwealth v. Spotz, 716 A.2d 580, 585 (Pa. 1998)).

Here, the evidence established that Appellant repeatedly (on May 18 and June 3, 2011) posed as a seller of a computer that did not exist, but which he listed for sale on Craig's List. Armed with a sawed-off shotgun that he pointed at his victim's face while demanding "all the f*cking money", Appellant clearly put Mr. Uyehara in fear of serious bodily injury in the course of taking his cash and cell phone. On June 3, 2011, Appellant struck again, the same ruse, and the very same instruments of crime -- an unmistakable multicolored bag with a sawed-off shotgun that fit neatly therein. That Appellant may or may not have been the actual "doer" of the June 2, 2011 robbery, is of little import under the circumstances. Indeed, Appellant's confessed cohort, Jarred, used Appellant's cell phone to set up the robbery, and the same multicolored bag and sawed-off shotgun to perpetrate it -- all of which he promptly returned to Appellant fresh after marauding.

Further, it must be observed, inasmuch as Appellant even half-heartedly contends that the verdict was against the weight of the evidence, this Court, sitting as fact finder, found Appellant's testimony incredible, and of scant, if any, weight.

**2. The Commonwealth Committed No "Error" By Prosecuting this Case under the Theory of Accomplice Liability.**

Next, Appellant contends that the Commonwealth "erred" by "instructing" the Court to "find [A]ppellant guilty of [a]ccomplice liability." Putting aside that: (a) the Commonwealth does not "err" but, if anything, might commit misconduct at trial; (b) nor does it "instruct" the Court; and (c) accomplice liability is a theory, not a predicate offense such as conspiracy for which an accused can independently be found "guilty" -- the evidence adduced at trial, as discussed in the preceding section, amply established Appellant's liability as an accomplice to robbery.

**3. Appellant Was Correctly Convicted of Robbery.**

Appellant claims that this Court erred by finding him guilty of the June 2, 2011 robbery. This claim is without merit for the reasons set forth in sections 1 & 2, supra.

**4. The Commonwealth Committed No Error by Arguing Accomplice Liability During Summation.**

Next, Appellant contends that the Commonwealth "erred" by "instructing" the Court to find Appellant "guilty" of a "new allege[d] criminal act". This claim is utterly meritless for the precise reasons set forth in sections 1 & 2, supra. Additionally, to the extent that Appellant is claiming that the Commonwealth committed prejudicial misconduct by arguing for the deadly weapon enhancement after he was found guilty of the above offenses is, quite frankly, frivolous on its face. The evidence established that Appellant pointed a sawed-off shotgun at Mr. Uyehara's face while demanding all his "f*cking money" and phone, thereby placing him in fear

of serious bodily injury. Moreover, this Court found the deadly weapon enhancement to apply only to the May 18, 2011 robbery of Mr. Uyehara. As such, Appellant is due no relief.

**5-8. Appellant's Claims of Counsel Ineffectiveness Are Premature and Should Be Deferred until Collateral Review.**

Finally, Appellant alleges numerous instances of appellate counsel ineffectiveness. Barring exceptional circumstances, however, Appellant cannot raise a claim of ineffective assistance of counsel on direct appeal. See e.g., Commonwealth v. Grant, 572 Pa. 48 (2002); Commonwealth v. Powell, 598 Pa. 224, 261-262 (2008); Commonwealth v. Liston, 602 Pa. 10 (2008); Commonwealth v. O'Berg, 584 Pa. 11 (2005); Commonwealth v. Fowler, 893 A.2d 758 (Pa. Super. 2006). The Supreme Court has recognized a "single exception" to this rule, permitting ineffectiveness claims to be raised on direct appeal when -- and only when -- the issue has been "fully developed at a hearing devoted to the question." See Fowler, 893 A.2d at 763 (citing Commonwealth v. Bomar, 573 Pa. 426 (2003)).

"[W]ithout an ineffectiveness hearing, there is an insufficient factual record to consider the claim." Powell, 598 Pa. at 262. "The absence of an ineffectiveness hearing, and the likelihood that other ineffectiveness claims will be discovered and raised on PCRA review, weigh against premature review of appellant's collateral claims on direct review." Id.

Here, by the sheer nature of the "appellate" claims alone, it is plain that Appellant did not raise an ineffectiveness claim until direct appeal, and this Court held no hearing on these claims while it retained jurisdiction. Accordingly, Appellant's claims of appellate counsel ineffectiveness should be deferred until collateral review.

Circulated 10/08/2015 11:41 AM

CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's judgment of conviction and sentence should be affirmed.

BY THE COURT:

DATE: 7/22/14

SUSAN I. SCHULMAN, J.

Circulated 10/08/2015 11:41 AM

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0011939-2011 |
| | : | CP-51-CR-0011940-2011 |
| | : | CP-51-CR-0011986-2011 |
| VS. | : | |
| | : | |
| | : | |
| TRAVIS GARRETTE | : | |
| | : | 75 EDA 2014 |

FILED
MAR 17 2015
Criminal Appeals Unit
First Judicial District of PA

SUPPLEMENTAL OPINION

SCHULMAN, S.I., J.

Travis Garrette ("Appellant") has appealed this Court's judgment of conviction and sentence. While a Pa.R.A.P. 1925(a) Opinion previously was issued on July 23, 2014, this Court issues the instant Supplemental Opinion in order to address a claim raised by Appellant following the granting of his petition to proceed pro se. For the reasons set forth herein, in addition to those contained in the July 23, 2014 Opinion, this Court recommends that its judgment be affirmed.

PROCEDURAL HISTORY

As previously set forth in this Court's July 23, 2014 Rule 1925(a) Opinion:

> On September 23, 2013, following a bench trial before this Court, Appellant was convicted of two counts of Robbery,[1] three counts of Possessing an Instrument of Crime ("PIC"),[2] and three counts of Prohibited Offensive Weapon ("POW").[3] On December 2, 2013, upon review of the pre-sentence investigation report ordered by this Court, and consideration of all relevant facts and circumstances of this case, this Court sentenced Appellant to a mandatory minimum sentence of five (5) to ten (10) years' incarceration for Robbery (under bill of information number

[1] 18 Pa.C.S. § 3701.
[2] 18 Pa.C.S. § 907.
[3] 18 Pa.C.S. § 908.

> 0011940), and a consecutive term of three (3) to six (6) years for Robbery (under bill of information number 0011986). No further penalty was imposed on any of Appellant's remaining six (6) convictions for PIC and POW.
>
> Appellant's trial counsel timely filed a post-sentence motion challenging the weight of the evidence, which this Court denied by Order entered December 18, 2013. Trial counsel thereafter was permitted to withdraw, and new counsel was appointed to represent Appellant on direct appeal. Counsel for Appellant timely filed a notice of appeal; upon reviewing the record, however, he determined that an appeal would be wholly frivolous. Accordingly, counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) and Commonwealth v. McClendon, 434 A.2d 1185 (Pa. 1981). Appellant was duly served with a copy of said Anders brief, and he timely filed a pro se Concise Statement of Matters Complained of on Appeal, the issues of which shall be addressed infra.

(Trial Ct. Op. at 1-2).[4]

On July 17, 2014, at the request of Appellant, counsel filed a "Petition to Withdraw as Counsel on Appeal", in order to permit Appellant to proceed pro se. The Superior Court remanded the matter for a hearing pursuant to Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998) (waiver of counsel colloquy). On October 27, 2014, this Court conducted a comprehensive on-the-record colloquy pursuant to Grazier to ensure that Appellant's waiver of counsel was knowing, intelligent and voluntary. Appellant thereafter was permitted to proceed pro se.

On November 17, 2014, Appellant filed a pro se "Concise Statement of Matters Complained of on Appeal [Pursuant to Pa.R.A.P.] 1925(b)." In addition to reasserting the first four (4) issues previously raised (which were addressed in this Court's July 23, 2014 Opinion), Appellant raises the following issue in his Rule 1925(b) Statement:

4 A thorough recitation of fact is set forth in this Court's July 23, 2014 Opinion at pp. 2-6.

**V. Whether "appellant was denied due process when the stenographer failed to follow Rule 1922 of Pennsylvania Rules of Appellate Procedure and/or failed to file the full accurate transcripts by omitting the Commonwealth's direct examination, appellant's counsel['s] cross examination, appellant's testimony, and [the] Trial Court's ruling of the verdict against appellant?**

## DISCUSSION

**Appellant's Claim Is Wholly Refuted by the Record.**

Although Appellant's claim is woefully lacking in specificity, this Court -- having presided over Appellant's bench trial and having reviewed the entire trial transcript -- finds that meaningful review of this claim is not overly impeded. Accordingly, this Court will address the merits of Appellant's claim.

Appellant contends that he was denied due process of law because certain (unspecified) portions of direct and cross-examinations, as well as the verdict, allegedly are missing from the trial transcript. The record refutes this claim.

At trial, the Commonwealth presented four (4) witnesses: (1) complainant, Taylor Uyehara; (2) complainant, Erik Eigornia; (3) Philadelphia Police Officer Michael Harvey; and (4) Philadelphia Police Detective Louis Velazquez. Additionally, Appellant testified as the lone defense witness. Contrary to Appellant's contention, the complete direct and cross-examinations (and, where applicable, redirect and recross-examinations) pertaining to each of the above five (5) witnesses are indeed included in the trial transcript. Specifically:

(1) Mr. Uyehara's direct examination is set forth at N.T. 09/23/13, pp. 20-31, followed by his cross-examination at pp. 31-49;

(2) Mr. Eignornia's direct examination is transcribed at N.T. 09/23/13, pp. 50-57, followed by his cross-examination at pp. 58-68, his redirect examination at pp. 68-71, and his recross-examination at pp. 71-73;

(3) Officer Harvey's direct examination is included at N.T. 09/23/13, pp. 73-79, followed by his cross-examination at pp. 79-92;

(4) Detective Velazquez's direct examination appears at N.T. 09/23/13, pp. 92-110, followed by his cross-examination at pp. 110-126; and

(5) Appellant's direct examination (*i.e.*, following a colloquy on his waiver of the right to remain silent) is set forth at N.T. 09/23/13, pp. 135-142, followed by his cross-examination at pp. 142-160, and redirect examination at pp. 160-161 (with no further questions by the Commonwealth).

Additionally, the parties' closing arguments are recorded at N.T. 09/23/13, pp. 164-171, and the verdict of the Court is set forth at pp. 171-177. Moreover, each of the above-cited segments of trial appears in full. As such, Appellant's makeweight due process claim is patently refuted by the record. Accordingly, he is due no relief.

CONCLUSION

For the reasons set forth in the foregoing Supplemental Opinion, in addition to those set forth in the July 23, 2014 Opinion, this Court's judgment of conviction and sentence should be affirmed.

BY THE COURT:

DATE: 3/16/15

SUSAN I. SCHULMAN, J.